IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOED LEE BARRERA | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-09-CV-1130-P-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Joed Lee Barrera, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of aggravated sexual assault. Punishment, enhanced by a prior felony conviction, was assessed at 72 years confinement. His conviction and sentence were affirmed on direct appeal. *Barrera v. State*, No. 05-06-00218-CR, 2007 WL 3173392 (Tex. App.--Dallas, Oct. 31, 2007, no pet.). Petitioner also filed an application for state post-conviction relief. The application was denied without written order on the findings of the trial court. *Ex parte Barrera*, WR-71,891-01 (Tex. Crim. App. May 20, 2009). Petitioner then filed this action in federal district court.

II.

In multiple grounds for relief, petitioner contends that the trial court denied his right to due process and a fair trial: (1) by exhibiting bias against him; (2) by excluding critical evidence that

supported his only defense; (3) by admitting hearsay evidence in violation of his Sixth Amendment right to confrontation; (4) by forcing petitioner to remove and display his prosthetic eyeball; and (5) by permitting an Oklahoma resident to serve on the jury. Petitioner also claims that he received ineffective assistance of counsel at trial and on appeal.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *appeal filed*, Sept. 8, 2009 (No. 09-70024). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002).

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2383 (2009). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Threadgill*, 2009 WL 2448499 at *5, *quoting Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004).

B.

Petitioner first contends that the trial court was biased against him. As examples of bias, petitioner accuses the judge of yelling at defense counsel in the presence of the jury, treating counsel with disdain and hostility, lending the prestige of her office to the prosecution, issuing an ex parte discovery order, and allowing the victim to testify that petitioner "had raped before and would rape again." (*See* Pet. Mem. Br. at 6-11).[1]

---

[1] Respondent argues that this claim is barred from federal habeas review under the "contemporaneous objection" rule because defense counsel never objected to the court's actions at any time during the trial. (*See* Resp. Ans. at 8-10). The court need not decide this procedural issue as petitioner's judicial bias claim fails on the merits.

1.

Due process requires that a defendant be accorded a "fair trial in a fair tribunal." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997). A defendant is denied due process if the judge is biased against him. *Id.*, 117 S.Ct. at 1797. However, claims of judicial bias are difficult to prove on federal habeas review "because the degree or kind of interest sufficient to disqualify a judge cannot be defined with precision." *Davis v. Thaler*, No. 4-09-CV-0434-A, 2010 WL 549787 at *11 (N.D. Tex. Feb. 16, 2010), *appeal filed*, Jun. 7, 2010 (No. 10-10593), *citing Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 1306 (2009). Generally, the Supreme Court has recognized two kinds of judicial bias -- actual bias and presumptive bias. *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Where, as here, a petitioner alleges actual bias, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Judicial rulings and intemperate remarks by the judge during the course of a trial almost never constitute actual bias. *Id.*, 115 S.Ct. at 1157. This includes remarks that are critical or disapproving of, or even hostile to, counsel and the parties. *Id.*; *see also Buntion*, 524 F.3d at 673-74

2.

Petitioner accuses the judge of angrily screaming at defense counsel in front of the jury and displaying great hostility toward his lawyers. (*See* Pet. Mem. Br. at 6). According to petitioner, the judge became angry with Ray Jobe, one of his attorneys, after Jobe violated a pretrial order that prohibited him from mentioning the victim's prior sexual behavior. (*See* St. App. Tr. at 13). When

Jobe argued during his opening statement that the victim chose a "life-style of drinking heavily, of engaging in -- in casual sexual encounters[,]" (*see* SF-III at 77-78), the judge held a hearing outside the presence of the jury, found that Jobe violated the pretrial order, and held him in contempt of court. (*Id.* at 78-79). Throughout the remainder of the trial, petitioner alleges that the judge gave his lawyers "dirty looks," addressed them in "a loud and angry tone of voice[,]" and generally spoke to them in "rude or disdainful tones." (*See* Pet. Mem. Br. at 6). In an attempt to establish that this behavior showed favoritism or antagonism on the part of the judge, petitioner relies on the affidavit of Laine Jones, a local public school administrator and a close friend of Jobe, who attended the trial. According to Jones:

> When I arrived at [court] the morning of Tuesday, February 7, 2006 a male prosecutor was making his opening statement to the jury. Mr. Jobe began his statement after the prosecutor, but stopped when an objection was made by the male prosecutor. At that point the judge yelled Mr. Jobe's name twice as she evidenced in her face and manner a great anger towards him. The judge then ordered the jury out of the courtroom and continued to berate Mr. Jobe in a very loud and angry fashion.

\* \* \* \*

> I remained in the courtroom during the trial testimony of the complainant . . ., and during part of the testimony of the second witness[.] During this period of time the trial judge's demeanor toward the defense was obviously hostile. The judge's loud tone of voice, grim facial expressions and very closed body language when addressing the defense or issues raised by the defense evidenced anger and hostility toward the defense. Conversely, the judge's demeanor to the prosecution appeared friendly and supportive. Based on what I observed of the judge's demeanor I came away with the very distinct impression that the judge strongly favored the side of the prosecution and strongly disfavored the defense, to the point where the judge was lending the prestige of her office to advance the interests of the prosecution.

(St. App. Tr. at 101-02). A similar observation was made by Gilbert Perales, the jury foreman, who stated in his affidavit that "it appeared to me that the judge not only favored the prosecution and was

dismissive of the defense, but that she believed the defendant should be convicted." (*See* Pet. Mem. Br., Exh. A at 1, ¶ 2). Both affidavits, as well as the affidavits of Ray Jobe and his co-counsel, Sheryl Adams, who alleged that they were "intimidated" by the judge, were before the state habeas court and cited by petitioner in his state writ.[2] In rejecting petitioner's claim of judicial bias, the state habeas court found that the record failed to establish that the trial judge favored the prosecution. *See Ex parte Barrera*, WR-71,891-01, Tr. at 86, ¶ 7. That finding, which was made by a different judge who did not preside over petitioner's trial, is entitled to a presumption of correctness in a subsequent federal habeas proceeding. *See* 28 U.S.C. § 2254(e)(1). Petitioner has failed to rebut that presumption by clear and convincing evidence. *Id.* Indeed, there is no evidence in the record, other than the affidavits of Laine Jones, a "close friend" of defense counsel, and Gilbert Perales, one of 12 jurors who found petitioner guilty, to suggest that the trial judge displayed any favoritism or antagonism whatsoever. To the extent any remarks made by the judge may be construed as prejudicial, the jury was told not to let those remarks influence their deliberations. In her final instructions, the judge strongly admonished the jury:

> [Y]ou are not to allow yourselves to be influenced in any degree whatsoever by what you may think or surmise the opinion of the Court to be. The Court has no right by any word or act to indicate any opinion respecting any matter of fact involved in this case, nor to indicate any desire respecting its outcome. The Court has not intended to express any opinion upon any matter of fact in this case, and if you have observed anything which you have or may interpret as the Court's opinion upon any matter of fact in this case, you must wholly disregard it.

---

[2] The court notes that Perales executed two affidavits. One affidavit, signed on February 15, 2006, is contained in the state habeas record. *Ex parte Barrera*, WR-71,891-01, Tr. at 122-24. The other affidavit, signed on September 16, 2008, is cited by petitioner in his state writ, *see id.*, Tr. at 28, but cannot be found anywhere in the state court record filed by respondent. Instead, the second affidavit appears as an exhibit to petitioner's federal writ. (*See* Pet. Mem. Br., Exh. A). Because petitioner lists the second affidavit as an exhibit to his state writ, and quotes from the affidavit in his state court filings, *see Ex parte Barrera*, WR-71,891-01, Tr. at 25 & 28, the court will give petitioner the benefit of the doubt and assume the second affidavit was inadvertently omitted from the state habeas record.

(St. App. Tr. at 33-34). These instructions are an important consideration in determining whether petitioner received a fair trial. *See United States v. Williams*, 809 F.2d 1072, 1088 (5th Cir.), *cert. denied*, 108 S.Ct. 228 (1987).

The court reaches the same conclusion with respect to the "questionable rulings" cited by petitioner as examples of judicial bias -- granting an ex parte discovery order and allowing the victim to testify that petitioner "had raped before and would rape again." (*See* Pet. Mem. Br. at 7-8).[3] These rulings, while possible grounds for appeal, simply do not rise to the level of actual bias. *See Liteky*, 114 S.Ct. at 1157. This ground for relief should be overruled.

C.

Petitioner also complains of several other evidentiary rulings made by the trial court. In particular, petitioner maintains that he did not receive a fair trial because: (1) the judge excluded evidence that the victim was "making out" with another man at a party before she left the party with petitioner; (2) the court permitted a physician, Dr. Irwin Kerber, to testify about the results of a rape examination performed by another doctor; and (3) the judge ordered petitioner to remove and display his prosthetic eyeball for a photograph that was shown to the jury. (*See* Pet. Mem. Br. at 22-28).

1.

Federal habeas relief is only available to correct errors of constitutional dimension. *See* 28 U.S.C. § 2254(a); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 104 S.Ct. 2367 (1984). State law issues, such as improper evidentiary rulings and the misapplication of state procedural rules, are not cognizable in a federal habeas proceeding unless the rulings were "so extreme as to result in a denial of a constitutionally fair [trial]." *Jackson v. Johnson*, 194 F.3d 641,

---

[3] The victim never testified that petitioner "had raped before and would rape again." Instead, the victim explained that she got a rape exam because "I didn't feel like I had been the first and I didn't think I would be the last." (*See* SF-III at 140).

656 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1437 (2000). Even the erroneous admission of prejudicial evidence does not justify habeas relief "unless the evidence played a 'crucial, critical, and highly significant' role in the [verdict]." *Id.*, *quoting Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1768 (1999).

2.

Prior to trial, the prosecution filed a motion to prohibit defense counsel from referring to the past sexual behavior of the victim. (*See* St. App. Tr. at 13). Petitioner, through his attorney, argued that evidence the victim kissed an unknown man at a party supported the defensive theory that the victim willingly had sexual relations with petitioner after they left the party together. (*See* SF-II at 5-12). After hearing from the prosecution and defense, the trial court excluded any mention of the "make out" session, believing it violated the Texas rape-shield law. (*Id.* at 11-12).[4] That ruling was affirmed on direct appeal. As the state appeals court noted, "[t]he exclusion of a victim's prior sexual history has been held to not generally violate the defendant's confrontation and cross-examination rights." *Barrera*, 2007 WL 3173392 at *3, *citing Allen v. State*, 700 S.W.2d 924, 930 (Tex. Crim.

---

[4] Texas Rule of Evidence 412(b) prohibits evidence of specific instances of an alleged victim's past sexual behavior in a prosecution for sexual assault or aggravated sexual assault, unless it is evidence:

>   (A)     that is necessary to rebut or explain scientific or medical evidence offered by the State;
>
>   (B)     of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;
>
>   (C)     that relates to the motive or bias of the alleged victim;
>
>   (D)     that is admissible under Rule 609; or
>
>   (E)     that is constitutionally required to be admitted[.]

TEX. R. EVID. 412(b)(2). Even if evidence of past sexual behavior is presumptively admissible under Rule 412(b)(2), the court must exclude the evidence unless "its probative value outweighs the danger of unfair prejudice." TEX. R. EVID. 412(b)(3).

App. 1985). That determination is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See Hale v. Quarterman*, No. 4-08-CV-0141-A, 2009 WL 1651504 at *4 (N.D. Tex. Jun. 10, 2009), *appeal dism'd*, No. 10-10676 (5th Cir. Sept. 28, 2010) (rejecting claim that exclusion of evidence of past sexual behavior violated Sixth Amendment right to confront witnesses and Fourteenth Amendment right to a fair trial). Even if the trial court's ruling was incorrect, petitioner has failed to show that it violated a specific constitutional right or was so egregious that it rendered his trial fundamentally unfair. *See id.*, 2009 WL 1651504 at *4, *citing Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1434 (2006).

The same is true with respect to Dr. Kerber's testimony and the trial court's order requiring petitioner to remove his prosthetic eyeball. On state collateral review, the habeas court determined that neither claim was of "constitutional magnitude[.]" *Ex parte Barrera*, WR 71,891-01, Tr. at 89, ¶¶ 20-21. Petitioner has not shown that either evidentiary ruling was improper, much less played a crucial or critical role in the outcome of his trial. The victim's medical records, which included the results of her rape examination, were admissible under Texas law as an exception to the hearsay rule. *See James v. Director, TDCJ-CID*, No. 2-06-CV-0342, 2009 WL 484987 at *9 (E.D. Tex. Feb. 26, 2009), *citing* TEX. R. EVID. 803. Dr. Kerber merely testified about the contents of the medical records. (*See* SF-IV at 67-123). The fact that petitioner had a prosthetic eye was relevant to the issue of identity. After the victim testified that she was unable to identify petitioner in a six-person photo line-up, (*see* SF-III at 153-54), Joanna Dixon, who attended a party with petitioner and the victim on the night of the alleged sexual assault, testified that she could identify petitioner because he had removed and displayed his glass eye at the party. (*See id.* at 236-37). The court permitted the prosecution to photograph petitioner's prosthetic eyeball outside the presence of the jury, and

allowed the photographs into evidence. (*See id.* at 207-08; St. Exhs. 42 & 43). Nothing about these rulings rises to the level of a federal constitutional violation.

D.

Petitioner further argues that he was denied a fair trial because an Oklahoma resident served on the jury. (*See* Pet. Mem. Br. at 29-33). It is true that one of the jurors, Joe Luis Reyna, lived in Durant, Oklahoma, (*see* SF-VII at 2-3), and may not have been qualified to serve under Texas law. *See* TEX. GOV'T CODE ANN. § 62.102(2) (Vernon 2005) ("A person is disqualified to serve as a petit juror unless the person ... is a citizen of this state and of the county in which the person is to serve as a juror[.]"); TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(1) (Vernon 2006) (allowing the prosecution or defense to challenge for cause any juror who "is not a qualified voter in the state and county under the Constitution and laws of the state"). However, petitioner has not shown that Reyna's service on the jury rendered his trial fundamentally unfair. As another judge in this district has recognized, "a juror disqualification 'defect is not fundamental as affecting the substantial rights of the accused and the verdict is not void for want of power to render it.'" *Hogue v. Scott*, 874 F.Supp. 1486, 1529 (N.D. Tex. 1994), *aff'd*, 131 F.3d 466 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1297 (1998), *quoting Kohl v. Lehlback*, 160 U.S. 293, 302, 16 S.Ct. 304, 307, 40 L.Ed. 432 (1895). There mere fact that Reyna was disqualified from jury service under Texas law does not entitle petitioner to federal habeas relief. *Id.*

E.

In two grounds for relief, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) had an actual conflict of interest after being held in contempt by the judge; and (2) made a "series of mistakes" during the trial. (*See* Pet. Mem. Br. at 18).

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *See Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). In order to obtain federal habeas relief, a petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial. *See Czere v. Butler*, 833 F.2d 59, 64 (5th Cir. 1987).

2.

Petitioner alleges that Ray Jobe had an actual conflict of interest as a result of being held in contempt, and an ongoing fear that certain trial tactics, such as vigorously cross-examining the victim, would further anger the judge. (*See* Pet. Mem. Br. at 15-18). In order to obtain habeas relief on this ground, petitioner must show that his attorney was burdened by an actual conflict of interest and that the conflict had some adverse effect on his defense strategy. *See Hernandez v. Johnson*, 108

F.3d 554, 559-60 (5th Cir.), *cert. denied*, 118 S.Ct. 447 (1997). Courts have routinely rejected claims that a defense lawyer held in contempt, or who fears a contempt finding, toils under a conflict of interest. *See, e.g. United States v. Logan*, 998 F.2d 1025, 1028-29 (D.C. Cir.), *cert. denied*, 114 S.Ct. 569 (1993) (rejecting the argument that repeated confrontations between trial counsel and the court, resulting in a finding of contempt, created a conflict of interest); *United States v. Jimenez*, 928 F.2d 356, 362 (10th Cir.), *cert. denied*, 112 S.Ct. 164 (1991) (finding no actual conflict of interest arising from the possibility that defense counsel would be held in criminal contempt); *United States v. Mouzin*, 785 F.2d 682, 699 (9th Cir.), *cert. denied*, 107 S.Ct. 574 (1986) (speculative concern that defense counsel, who had been disbarred prior to trial, might face additional disciplinary action by the district court did not create a conflict of interest or otherwise prevent counsel "from competing vigorously with the government before the trial court").

In a sworn affidavit submitted to the state habeas court, Jobe claimed that he was intimidated by threats of incarceration and "dirty looks" from the trial judge, which affected his ability to represent petitioner. According to Jobe:

> [T]he judge's hostile threat of incarcerating the undersigned defense counsel for going outside the "parameters" of the court created an actual conflict of interest between defense counsel and his client. Vigorous cross-examination, which went all the way to [the] edge of what the law would permit, and developed every aspect of what happened leading up to the alleged assault was absolutely necessary to provide an effective defense in this case. Yet such vigorous cross-examination posed [a] very serious risk to defense counsel.
>
> The problem created for defense counsel was that as he sought to examine every aspect of the complainant's observed conduct, he created the risk that the court would place him in jail, impose further fines against him and perhaps seriously damage him in his career and livelihood. Although I perceived the immediate threat posed to me by the judge's attack, I failed to recognize, in the intensity of the trial environment, the terrible conflict of interest that was created by the judge's threats against me . . .

* * * *

> To understand how the conflict of interest impacted on the performance of the undersigned counsel's trial responsibilities, consider what counsel was required to do after the second day of trial. Although the most important witness which counsel would cross-examine would be offered the next morning, counsel was also immediately confronted with understanding the nature and effect of a contempt charge and securing representation for himself. Counsel's responsibilities that evening, and throughout the balance of the trial hereof, were necessarily divided between protecting his client and protecting himself. As a result, my effort to focus on representing my client was compromised. I was less thorough and less effective in my role as defense counsel as a result of this conflict, both in my preparation and in the execution of my responsibilities. In my opinion, as a direct result of the judge's express and implied threats which continued throughout the trial, and off the record in most cases, I do not believe that reasonably effective assistance of counsel could have been provided to Mr. Barrera in this case. In my opinion Ms. Adams and I would have ended up in jail if we had tried any harder to do an effective job of representing Mr. Barrera.

*Ex parte Barrera*, WR-71,891-01, Tr. at 97-98. Sheryl Adams agreed that the judge's hostility toward the defense -- in word and gestures -- intimated her "from providing the full measure of thorough and aggressive representation which was needed in such a difficult case." *Id.*, Tr. at 129. Adams explained:

> In this respect the judge managed to create what I now recognize was a conflict of interest between my client and me. My client's interest was clearly in my examination of the complainant detailing every legally admissible aspect of the complainant's behavior up to the point the complainant and defendant left together. However, if I did such a thorough examination, there was direct risk to me that the judge, given her stated position, would hold me in contempt and put me in jail. I did not recognize the conflict created, or discuss the conflict with Mr. Jobe or my client at the time, but I have no doubt that the judge's behavior intimidated me from performing a full and thorough cross-examination of the complaining witness.

*Id.*, Tr. at 130. Notwithstanding the testimony of defense counsel, which is largely conclusory and self-serving to the interests of petitioner, the state habeas court found that Jobe and Adams "argued

Applicant's position in all hearings before the Court, cross-examined thoroughly all the State's main witnesses, and objected to certain evidence presented by the State." *Id.*, Tr. at 88-89, ¶ 18. An independent review of the state court record confirms that counsel provided petitioner with an adequate, if not zealous, defense. Thus, there is no basis for concluding that petitioner received ineffective assistance of counsel due to an actual conflict of interest.

3.

Petitioner also criticizes defense counsel for failing to file pretrial motions or prepare an opening statement in advance, for not effectively cross-examining the victim, and for failing to object to the trial judge's inappropriate behavior and note-taking by the jurors. (*See* Pet. Mem. Br. at 18-20). None of these arguments have merit. "A failure by counsel to file motions does not *per se* constitute ineffective assistance of counsel." *See Martin v. Thaler*, No. 4-10-CV-0050-A, 2010 WL 2697155 at *4 (N.D. Tex. Jul. 7, 2010), *citing Kimmelman v. Morrison*, 477 U.S. 365, 383-84, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986). Petitioner does not identify what specific motions should have been filed or explain how those motions would have affected the outcome of the trial. *See id.*, 2010 WL 2697155 at *4. The record shows that defense counsel made an opening statement that fairly summarized his theory of the case. (*See* SF-III at 76-83). As previously discussed, the state habeas court found that defense counsel thoroughly cross-examined the state's main witnesses, *see Ex parte Barrera*, WR-71,891-01, Tr. at 88, ¶ 18, and petitioner offers nothing to rebut that finding.[5] Although counsel did not object to the trial judge's behavior, petitioner has not shown how he was prejudiced thereby. The court rejects petitioner's speculative argument that counsel's failure

---

[5] Petitioner suggests that defense counsel should have more thoroughly cross-examined the victim about her level of intoxication and a notation in her medical records indicating that she did not know if she was raped anally. (*See* Pet. Mem. Br. at 18-19). However, the record shows that the victim was questioned by defense counsel on both of these matters. (*See* SF-III at 187-88, 190-91, 197-98). There is no reason to believe that additional cross-examination would have resulted in a different verdict.

to object allowed the prejudicial conduct to continue unabated and "may have caused the jury to vote for conviction rather than acquittal." (Pet. Mem. Br. at 19). Nor has petitioner shown how he was prejudiced by counsel's failure to object to note-taking by the jurors. In rejecting this claim on direct appeal, the state court held that even though petitioner failed to preserve the issue for appellate review, there was no evidence that the trial court abused its discretion by allowing the jurors to take notes. See *Barrera*, 2007 WL 3173392 at *6. This ground for relief should be overruled.

F.

Finally, petitioner criticizes his appellate lawyer, Lawrence B. Mitchell, for failing to raise certain issues on direct appeal and for filing a brief that was "so deficient that it almost shocks the conscience[.]" (Pet. Mem. Br. at 11-15). "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989); *see also Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 3313-14, 77 L.Ed.2d 987 (1983). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle*, 343 F.3d at 445; *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.*, *quoting Williamson*, 183 F.3d at 462-63.

Mitchell raised two issues in his appellate brief: (1) the trial court abused its discretion by excluding evidence of the victim's conduct at the party; and (2) the trial court abused its discretion by allowing the jurors to take notes. In an affidavit submitted to the state habeas court, Mitchell

stated that he "raised every issue on appeal that was supported by the evidence and the law and in which one of appellant's substantial rights had been adversely affected so that any error claimed was harmful and would warrant a reversal of either the conviction or the sentence." *Ex parte Barrera*, WR-71,891-01, Tr. at 135. The state court accepted Mitchell's explanation and found that petitioner "was in no way denied his right to effective assistance of counsel on appeal." *Id.*, Tr. at 89-90, ¶¶ 23, 25. Although Mitchell did not raise the additional claims suggested by petitioner -- including challenging the trial court's "bizarre decision" compelling the removal of his prosthetic eye -- petitioner has not shown that his conviction would have been reversed had those claims been presented for appellate review. *See Davis v. Thaler*, No. 3-07-CV-0167-B, 2010 WL 2034791 at *11 (N.D. Tex. Mar. 26, 2010), *rec. adopted*, 2010 WL 2034777 (N.D. Tex. May 19, 2010), *appeal filed*, Jun. 7, 2010 (No. 10-10596). In fact, all the claims petitioner believes should have raised on direct appeal have been rejected on federal habeas review. *See id.*, 2010 WL 2034791 at *11, *citing Jackson v. Quarterman*, No. 3-06-CV-0494-G, 2008 WL 58879 at *10 (N.D. Tex. Jan. 3, 2008), *aff'd*, 358 Fed. Appx. 585, 2009 WL 5102867 (5th Cir. Dec. 23, 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected by federal habeas court). This ground for relief should be overruled.

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place

in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 11, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE